Miron Kroyt and Claire Sheftel Kroyt v. Commissioner.
Kroyt v. Commissioner
Docket No. 80798.
United States Tax Court
T.C. Memo 1961-322; 1961 Tax Ct. Memo LEXIS 27; 20 T.C.M. (CCH) 1665; T.C.M. (RIA) 61322; November 30, 1961
*27 The petitioners are husband and wife. Miron Kroyt, a professional musician, plays the piano. His professional activities in the several years prior to the European trip to be referred to hereafter were largely devoted to teaching music. He had also appeared in concert as a soloist, and in duo with his wife who, on such occasions, played the violin or viola. Claire Kroyt was likewise a professional musician. Prior to said European trip, Claire played the violin and viola. Her professional activities had been in part devoted to teaching, but she had also played concert engagements and had played chamber music both in public and in private gatherings. Petitioners went to Europe in June of 1955 and remained there until November of 1957. The purposes of the trip were to enable Claire to receive training and coaching in order to learn to play the viola d'amore, an instrument differing materially from the violin and viola; to enable Claire and Miron to receive training and coaching to play the viola d'amore and piano in concert as a duo; and to enable petitioners to establish a European reputation as duo performers with the objective of ultimately being accepted as such in the United States *28 and with the anticipation that concert engagements as a duo in the United States would be forthcoming as a result. Held: That the deductions claimed by petitioners for the years 1955 and 1956 in the respective amounts of $3,401.01 and $3,094.80 as expenses in connection with their European trip are not ordinary and necessary expenses paid in carrying on a business or traveling expenses paid in the pursuit of a business, or ordinary and necessary expenses paid in the production of income within the meaning of sec. 162(a) or 212(1) of the Code of 1954. David Hoffman, Esq., 165 Broadway, New York, N. Y., for the petitioners. Gerald J. Robinson, Esq., for the respondent. FISHER
Memorandum Findings of Fact and Opinion FISHER, Judge: Respondent determined deficiencies in income tax and addition to tax of petitioners as follows: Year
Deficiency
Addition to Tax
1955
$1,885.62
$146.72
1956
708.02
None
Some of the issues have been disposed of by stipulation and will be reflected in our decision under Rule 50. The only issue for our consideration is whether or not petitioners may deduct amounts paid by them in connection with a European trip undertaken by them to enable them to learn new skills and to establish a reputation therefor. Findings of Fact Some of the facts are stipulated and are incorporated herein by this reference. The joint income tax returns of petitioners for the years 1955 and 1956 were filed with the district director of internal revenue, Upper Manhattan, on April 13, 1956, and April 13, 1957, respectively. Petitioners, both professional musicians *30 for many years, were married in 1952. Miron was a pianist. His professional activities in the several years prior to a European trip in 1955 were largely devoted to teaching music. He had also performed in concert as a soloist, and occasionally in duo with Claire who, on such occasions, played the violin or viola. Prior to the European trip in 1955, Claire played the violin and viola. Her professional activities had been to some extent devoted to teaching, but she had played concert engagements and had played chamber music both in public and private engagements. Petitioners went to Europe in June of 1955 and remained there until November of 1957. The purposes of the trip were to enable Claire to receive training and coaching in order to learn to play the viola d'amore as a professional artist; to enable Claire and Miron to receive training and coaching to play the viola d'amore and piano in concert performances as a duo; and to enable petitioners to establish a reputation in Europe as such a duo with the ultimate objective of being accepted as such in the United States and the anticipation that concert engagements as a duo in the United States would be forthcoming as a result. *31 The viola d'amore differs materially from the violin and viola. It is a seven stringed instrument and is well adapted to the playing of music which, with its background literature, had been described as esoteric and baroque. There was much interest therein during the period in question. When petitioners went to Europe, they did not know how long they would stay. They did not expect to make any money on the trip and planned to spend what was required to achieve their aims. Upon their arrival, petitioners went to Holland for preliminary talks about possible appearances. They then went to Berlin to renew old musical connections. Shortly thereafter, they went to Rome and spent the remainder of 1955 in Rome for training and coaching under Sabatini. Claire was coached and trained on the viola d'amore and she and Miron were coached and trained as a viola d'amore and piano duo. They also practiced four or five hours a day and studied the esoteric literature relating to the viola d'amore. When Sabatini considered them ready for concert work, a manager was engaged and concerts were booked for April 1956 in Italy. (They gave no concerts in 1955.) The expenses of the concerts were borne *32 by petitioners, who received no remuneration except the unsolicited sum of $24 in Lugo, Italy. Part of the expense for the 1956 concerts was paid in 1955 and part in 1956. In 1955, in an emergency, Claire, as a substitute for Sabatini, played the viola with the Milan Orchestra for two weeks and received compensation of $94.22. The 1956 concerts were well received. Petitioners received favorable notices which, together with programs and advertisements, were retained by them and arranged for later use in their effort to establish a reputation in the United States. Claire played both the viola and viola d'amore at these concerts. After the 1956 concerts, other managers were engaged and concerts for 1957 were booked in Berlin, Vienna, and London. Petitioners paid all expenses, part of them in 1956 and part in 1957. The concerts were well received and there were favorable notices which again were retained by petitioners and arranged with the 1956 notices for later use in the effort to establish a United States reputation. On petitioners' return to the United States in November 1957, a few concerts were booked including one in Carnegie Hall. In 1960, petitioners were engaged as a *33 duo by the State Department, receiving a grant from the Speakers and Artists Bureau of the United States Information Service for several concerts in Germany. They likewise participated as visting artists in the American Cultural Centers program. Artists, such as petitioners, who were not well known had great difficulty in procuring concert work in the United States without prior publicity in Europe and it was a practice for those who could afford it to go to Europe and perform in order to get European press notices. The presentation of such notices was a material factor in facilitating later acceptance in the United States. The amounts (but not the deductibility) of the expenditures claimed by petitioners as deductions for 1955 and 1956 are stipulated. The respondent determined that the deductions in issue are unallowable upon the ground, inter alia, that they were not ordinary and necessary business expenses within the meaning of section 162(a) or allowable within the purview of section 212. Petitioners kept their books and filed their income tax returns for the years in question on a calendar year and cash basis. Opinion The purposes of the European trip which is the focal *34 point of this case have been fully set forth in our Findings. In addition to expenditures for travel and subsistence, petitioners paid for coaching and training, largely for developing a new skill by Claire (i.e., performance on the viola d'amore) but also for instruction and training of both petitioners in performance as a piano and viola d'amore duo. Their prior experience as professional musicians did not include these activities. Petitioners likewise engaged managers to arrange concert performances. All of the expenses of the concerts here significant were paid by petitioners. The purpose of the concerts was to build up a European reputation as duo performers as a basis for subsequent acceptance in the United States. In support of this objective they gathered press notices, programs, and advertisements to be presented to concert managers upon their return to the United States. Petitioners had no expectation of profit from the concert performances in Europe. Of the European expenditures, petitioners claim deductions of $3,401.01 and $3,094.80 for the years 1955 and 1956, respectively, as ordinary and necessary business expenses, or ordinary and necessary expenses for the production *35 of income. The amounts are stipulated, but respondent maintains that such amounts are not allowable as deductions. We agree with respondent's contentions in this respect. We do not think that the expenditures were paid in carrying on a business within the meaning of section 162(a). The "business" to which they relate was nonexistent during the period in question. The expenditures were rather in connection with acquiring new skills and preparing for engaging in a new business activity to be begun in the future. . Illustrative, though in a somewhat different factual setting, is . On the basis of like reasoning, it is apparent that the expenditures were not in the "pursuit of a trade or business" within the meaning of section 162(a)(2). See . The controlling principles are equally applicable under section 212(1). The expenditures were not paid in the production of income. They were made in preparing for the production of income in the future. See . No direct or immediate profit was expected. *36 James M. Osborn, supra, p. 604. We add that we do not think that the expenditures in question were ordinary and necessary expenses within the meaning of either section 162(a) or 212. The amounts paid by petitioners, in the setting here described, for travel, coaching management, concert training, and the building of a European reputation as a basis for what might in part, at least, be described as good will, may well represent a segment of the capital structure from which income may ultimately emerge, but, upon the facts before us they do not represent ordinary and necessary expenses. In , the Supreme Court said in part (pp. 115-116): Reputation and learning are akin to capital assets, like the good will of an old partnership. Cf. . For many, they are the only tools with which to hew a pathway to success. The money spent in acquiring them is well and wisely spent. It is not an ordinary expense of the operation of a business. See also ; James M. Osborn, supra, p. 605. *37 Petitioners rely heavily upon (C.A. 9, 1959), reversing ; and Frieda Hempel, a Memorandum Opinion of this Court. We think both of these cases clearly distinguish themselves from the instant case on the facts. In Brooks, taxpayer was a research scientist. To adequately perform her research duties, it was necessary for her to travel in Europe. To maintain her existing position with the University of California, she was required by her contract to engage in continuous research. She had derived outside profit from her previous years of research and expected to derive such profit in the future. The expenses in question were incurred in her sole present activity and not for the purpose of gaining any new or better job. In Hempel, the activities involved were in pursuit of her lifelong and primary occupation, that of an opera and concert signer. In the light of the foregoing discussion we hold that the claimed deductions are not allowable under either the general provisions of section 162(a) or the provisions of section 162(a)(2) or 212(1). No other basis for allowance suggests itself. In view of our holding, *38 there is no occasion for us to consider the several alternative arguments advanced by respondent. Decision will be entered under Rule 50.